In re SUBURBAN MOTOR FREIGHT,
INC., Debtor.

Stephen K. YODER, Trustee,

v.

OHIO BUREAU OF WORKERS'
COMPENSATION.

No. C–2–92–30.

United States District Court,
S.D. Ohio, E.D.

March 25, 1992.

Quintin F. Lindsmith and Harry Wright, IV, Bricker & Eckler, Columbus, OH, for plaintiff.

Larry Rhodebeck, Atty. Gen. Office, Columbus, OH, for defendant.

## MEMORANDUM AND ORDER

BECKWITH, District Judge.

■ This matter is before the Court on the appeal of the chapter 7 trustee (the "Trustee") of the Opinion and Order on Objection to Claim (the "Order"), entered on December 6, 1991 by the United States Bankruptcy Court for the Southern District of Ohio. 134 B.R. 617. The Court's jurisdiction is predicated on 28 U.S.C. § 158(a). The sole issue presented by the appeal is

whether the bankruptcy court correctly determined that unpaid Ohio workers' compensation premiums owing by Suburban Motor Freight, Inc. (the "Debtor") give rise to a priority claim as an excise tax under 11 U.S.C. § 507(a)(7)(E). This issue is a question of law, which the Court will consider *de novo*. *In re Contractors Equipment Supply Co.*, 861 F.2d 241, 243 (9th Cir. 1988).

## I. *Background*

The Debtor filed its petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330 (the "Bankruptcy Code"), on February 27, 1987. In 1988, the Debtor's chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code, and appellant, Stephen K. Yoder, was appointed trustee of the Debtor's estate. The Ohio Bureau of Worker's Compensation (the "Bureau") filed a timely proof of claim (the "Claim") for unpaid premiums in which it asserted that the unpaid premiums constitute an excise tax entitled to priority pursuant to § 507(a)(7)(E) of the Bankruptcy Code. The amount of the claim is not in dispute.

In December 1990, the Trustee filed an objection (the "Objection") to the Claim in which the Trustee asserted that the Claim was not entitled to priority status as a matter of law and that the Claim should be allowed as an unsecured, nonpriority claim. The Bankruptcy Court denied the Objection, and the Trustee appealed.

## II. *Analysis of Ohio Workers' Compensation Premiums as an Excise Tax*

The Bankruptcy Code affords priority status to claims of governmental units that meet the qualifying standards of § 507(a)(7)(E):

(a) The following expenses and claims have priority

.    .    .    .    .

(7) ... allowed unsecured claims of governmental units; only to the extent that such claims are for—

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition.

Accordingly, the Claim is entitled to priority status in the Debtor's bankruptcy case only if it is a claim for an excise tax.

The Bankruptcy Code does not define a "tax" or an "excise tax" for purposes of § 507(a)(7)(E), and the courts have attempted to structure a definition that includes all taxes while excluding governmental unit charges that are more properly characterized as fees. In 1940, the United States Supreme Court stated that a tax under the Bankruptcy Act of 1898 was a pecuniary obligation "laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1940).

The Ninth Circuit Court of Appeals has enunciated a four-prong test based on the *Feiring* definition. *County Sanitation District No. 2 of Los Angeles County v. Lorber Industries of California, Inc. (In re Lorber Industries of California, Inc.)*, 675 F.2d 1062, 1066 (9th Cir. 1982). The *Lorber* test has been utilized in the Sixth Circuit. *See, e.g., United States v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 942 F.2d 1055, 1057 (6th Cir.1991). Under the *Lorber* test, a payment demanded by a governmental unit is a tax if it is:

(1) an involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(2) imposed by, or under the authority of, the legislature;

(3) for public purposes, including the purpose of defraying expenses of

government or undertakings authorized by it; and

(4) under the police or taxing power of the governmental unit.

Therefore, the Court has applied the four factors of the *Lorber* test to Ohio workers' compensation premiums to determine whether they are a tax and whether the Claim is, accordingly, entitled to priority under § 507(a)(7)(E) of the Bankruptcy Code.

## A. Involuntary Pecuniary Burden

The first prong of the *Lorber* test considers whether the premiums constitute an involuntary pecuniary burden. Ohio's workers' compensation scheme is mandatory. Employers are not permitted to opt out of the scheme in favor of private insurance. Ohio Revised Code ("O.R.C.") § 4123.82(A). While Ohio's system permits self-insurance on a very limited basis, that privilege is limited to certain employers, and participation in the program is mandatory for all others. O.R.C. § 4123.35(B).

The state's remedy for noncompliance is a lien. O.R.C. § 4123.76. The imposition of a lien as a remedy for nonpayment does not completely distinguish the premiums from clearly non-tax charges, such as water and utility fees; however, that factor, when coupled with the mandatory participation factor, creates an inference that the premiums are an involuntary burden. While residents of a municipality may elect not to use water or utilities provided by the municipality, an employer may not conduct business without paying workers' compensation premiums.

The Trustee argues that employers may choose not to pay workers' compensation premiums by choosing not to conduct business in the state and that, therefore, the burden created by the premiums is voluntarily assumed. The Trustee's argument is well-taken; nevertheless, by choosing not to conduct business in the state, an individual or entity chooses not to be an employer. As long as the individual or entity is an employer in Ohio, the premiums are a burden borne involuntarily.

## B. Imposed By or Under Authority of the Legislature

The second prong of the *Lorber* test is satisfied if the premiums are imposed pursuant to legislative authority. The Ohio legislature was granted the authority to enact laws establishing a workers' compensation scheme by the Ohio Constitution, Article II, § 35:

For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom.

The Ohio legislature enacted O.R.C. Chapter 4123 pursuant to the constitutional grant of authority in Article II, § 35 of the Ohio Constitution. Accordingly, this Court agrees with the bankruptcy court that the premiums satisfy the second prong of the *Lorber* test.

## C. Public Purpose

The third prong of the *Lorber* test considers whether the premiums are imposed for a public purpose. The test does not require that the premiums be solely for a public purpose but that there be a primarily public component to the purpose for exacting premiums.

The Court of Appeals for the Fourth Circuit reviewed West Virginia's workers' compensation scheme, a scheme that closely resembles Ohio's, and found that that scheme served a public purpose. *New Neighborhoods v. West Virginia Workers' Compensation Fund*, 886 F.2d 714, 718–719 (4th Cir.1989). The *New Neighborhoods* court found that a public purpose was served by allocating the costs associated with injuries or illnesses of employees among employers rather than among members of the general public.

The Trustee makes much of the argument that the purpose served by Ohio's

workers' compensation fund is to relieve employers from tort liability to employees and that any public benefit is incidental to that purpose. In fact, the existence of the fund ensures that injured employees will not become dependent upon public support due to the insolvency of their employers or their own inability to pursue tort judgments against their employers. *See New Neighborhoods*, 886 F.2d at 718–719. A public purpose is served by requiring employers to pay premiums in advance of and in anticipation of injuries to employees rather than waiting until injuries occur and relying on the employers' continued solvency to prevent injured employees becoming dependents of the state. Accordingly, in addition to any benefit to employers and employees specifically, the state fund serves an important public purpose and satisfies the third prong of the *Lorber* test.

### D. Imposed Under the Police or Taxing Power of the State

The fourth prong of the *Lorber* test examines whether the premiums are imposed pursuant to the state's police or taxing power. If the premiums are imposed pursuant to either of those powers, they are properly classified as taxes rather than fees. Ohio's workers' compensation premiums are without question imposed pursuant to the state's police or taxing authority. *New Neighborhoods*, 886 F.2d at 720; *State ex rel. Yaple v. Creamer*, 85 Ohio St. 349, 97 N.E. 602 (1912). Thus, the Court agrees with the bankruptcy court that the fourth prong of the *Lorber* test is thus satisfied.

### III. *Discussion*

The Court of Appeals for the Sixth Circuit has utilized a standard similar to the *Lorber* test for determining whether a premium is a fee or a tax. This standard was described in *National Cable Television Assn. v. United States*, 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1148–49, 39 L.Ed.2d 370 (1974) and adopted by the Sixth Circuit in *United States v. River Coal Company, Inc.*, 748 F.2d 1103, 1106 (1984): "[The] chief distinction is that a tax is an exaction for public purposes while a fee relates to

an individual privilege or benefit to the payer."

In applying the *National Cable* standard, the *River Coal* court determined that an abandoned mine reclamation fee was a tax for purposes of priority in bankruptcy. *River Coal*, 748 F.2d at 1106. The *River Coal* case was decided under the Bankruptcy Act of 1898; however, the standards enunciated in that case are applicable to claims filed pursuant to the Bankruptcy Code. The primary focus of the Sixth Circuit's standard is the distinction between a fee, which bestows a benefit on the payer, and a tax, which is an involuntary burden that bestows a benefit on the public at large. Under this analysis, as under the *Lorber* test, the Court finds that the Ohio workers' compensation premiums in question are more appropriately characterized as a tax.

The overwhelming majority of courts that have considered the issue at hand have found workers' compensation premiums to be taxes for purposes of priority of claims under the Bankruptcy Code. The Fourth Circuit Court of Appeals did so in *New Neighborhoods*, 886 F.2d at 714. The *New Neighborhoods* court was considering the West Virginia workers' compensation plan, a scheme that is very similar to Ohio's in that it is mandatory in nature and does not permit employers the option of private insurance. *See* West Virginia Code § 23–2–7. *See also In re Carlton Enterprises, Inc.*, 103 B.R. 876 (Bankr.N.D.Ohio 1989); *Matter of Pennsylvania Iron & Coal Co., Inc.*, 40 B.R. 918 (Bankr.S.D.Ohio 1984).

Only one court has determined that Ohio's workers' compensation premiums are not entitled to priority status under the Bankruptcy Code. *In re Smith Jones, Inc.*, 36 B.R. 408 (Bankr.D.Minn.1984). The *Smith Jones* court reasoned that workers' compensation premiums are essentially insurance premiums, which do not benefit the general public, but rather serve an entirely private and individual purpose. *Smith Jones*, 36 B.R. at 410. The reasoning of the bankruptcy court in *Smith Jones* ignores the public purpose of the Ohio workers' compensation scheme and con-

flicts with the reasoned analysis of the majority of the courts that have considered the issue. The Court is not persuaded by the *Smith Jones* analysis.

### IV. *Conclusion*

Based upon its conclusion that the workers' compensation premiums represented by the claim satisfy the four prongs of the *Lorber* test, which is based on the Supreme Court's *Feiring* standard, as well as the standard applied by the Sixth Circuit in *River Coal,* the Court determines that the Claim is entitled to priority under § 507(a)(7)(E) of the Bankruptcy Code. Accordingly, the bankruptcy court's denial of the Objection is **AFFIRMED.**

**IT IS SO ORDERED.**